# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI HAYNES ROACH,<br><br>      Plaintiff,<br><br>    v.<br><br>TATE PUBLISHING & ENTERPRISES, et al.,<br><br>      Defendants. | Case No. 1:15-cv-00917-SAB<br><br>ORDER GRANTING PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS<br><br>(ECF Nos. 68, 69) |

Currently pending before the Court is Plaintiff Terri Haynes Roach's ("Plaintiff") application for entry of default judgment against Defendants Tate Publishing & Enterprises, LLC, Tate Music Group, and Richard Tate (collectively, "Defendants").[1]

This matter was set for oral argument on November 1, 2017. Cameron Sehat appeared telephonically for Plaintiff. Defendants did not appear at the hearing. Having considered the moving papers, the Court's file, and the arguments at the November 1, 2017 hearing, the Court issues the following order.

## I.

## BACKGROUND

The complaint in this action was filed on June 15, 2015. (ECF No. 1.) Plaintiff's complaint brings a single cause of action against Defendants for copyright infringement.

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge. See ECF Nos. 10, 11, 12.

Plaintiff, an individual residing in Fresno, California, is a fiction writer who authored a work entitled "A Special Gift" ("the book"). (Compl. ¶ 11.) Plaintiff alleges that Defendants sold the book online to various customers throughout the country. (Compl. ¶ 12.) Plaintiff has not received compensation for these sales and Defendants did not have permission to sell the book. (Compl. ¶ 13.)

The action was stayed on August 28, 2015, for the parties to engage in arbitration. (ECF No. 24.) On March 20, 2017, the stay of the action was lifted after Defendants failed to pay the arbitration costs preventing the arbitration from proceeding forward. (ECF No. 51.) On April 19, 2017, defense counsel's motion to withdraw as counsel in this action was granted and Defendants Tate Publishing & Enterprises, LLC, and Tate Music Group were ordered to retain counsel in this matter and all defendants were to file an answer to the complaint on or before May 22, 2017. Defendants did not comply with the April 19, 2017 order.

On June 12, 2017, default was entered against Defendants Richard Tate and Tate Publishing & Enterprises, LLC. (ECF No 61.) On June 15, 2017, default was entered against Defendant Tate Music Group. (ECF No. 65.)

On September 29, 2017, Plaintiff filed a motion for default judgment against Defendants. (ECF No. 68.) On October 11, 2017, Plaintiff filed a certificate of service for the motion for default judgment. (ECF No. 69.)

## II.

## LEGAL STANDARD

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, unless a claim is for a sum certain or a sum that can be made certain by computation, a party must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). Upon entry of default, the complaint's factual allegations regarding liability are taken as true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012). However, the complaint's factual allegations relating to the amount of damages are not taken as true. Geddes, 559 F.2d at 560. Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal.

2008).  "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992).  Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

Entry of default judgment is not a matter of right and it is within the discretion of the court whether default judgment should be entered.  Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001); Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).  The Ninth Circuit has set forth the following factors for the court to consider in exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

### III.

### DISCUSSION

In the current application, Plaintiff seeks default judgment and requests monetary damages, a permanent injunction, attorneys' fees, and costs.

**A.  Jurisdiction**

1.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28 U.S. C. § 1331, federal courts have original over "all civil actions arising under the Constitution, laws, or treaties of the United States.  "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law."  Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 8–9 (1983) (citations omitted)).  "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which

provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Republican Party of Guam, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of 17 U.S.C. § 504(c)(2). As the claim in this action arises under federal law, federal question jurisdiction exists.

### 2. Personal Jurisdiction

The Court previously determined that Plaintiff has alleged sufficient facts in the complaint to make a prima facie showing of personal jurisdiction. (ECF No. 24.)

### 3. Service of Process

Rule 4 of the Federal Rules of Civil Procedure sets forth the requirements for the manner of service on an individual. Federal Rule of Civil Procedure 12(b)(5) states that a party may assert the defense of insufficient service of process by motion.

Federal Rule of Civil Procedure 12(h) states that

A party waives any defense listed in Rule 12(b)(2)-(5) by:
(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
(B) failing to either:
  (i) make it by motion under this rule; or
  (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(A)(1) as a matter of course.

Fed. R. Civ. P. 12(h).

Federal Rule of Civil Procedure 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that make a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

Here, Defendants filed a motion to dismiss and did not raise the defense of insufficient service of process. Therefore, the Court finds that even if Defendants were insufficiently served, they waived any defense of insufficient service of process. See Fed. R. Civ. P. 12(h).

### B. The Eitel Factors Weigh in Favor of Default Judgment

As discussed below, consideration of the Eitel factors weigh in favor of granting default judgment in this instance against Defendants.

4

1        1.      Possibility of Prejudice to Plaintiff

2        The first factor weighs in favor of entry of default judgment.  If default judgment is not

3    entered, Plaintiff is effectively denied a remedy for the violations alleged in this action unless

4    Defendants appear again.  While Defendants did initially appear, Defendants have subsequently

5    not complied with the Court's orders and have stopped defending this action.  Defendants may

6    never appear again to defend this action.  Therefore, this factor weighs heavily in favor of

7    granting default judgment.

8        2.      The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

9        The court is to evaluate the merits of the substantive claims alleged in the complaint as

10   well as the sufficiency of the complaint itself.  In doing so, the court looks to the complaint to

11   determine if the allegations contained within are sufficient to state a claim for the relief sought.

12   Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).  "[F]acts which are not established by

13   the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and

14   cannot support the judgment."  Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th

15   Cir. 1988) (finding it error to award default judgment where the complaint was insufficient to

16   state a claim).

17       Plaintiff brings a claim of copyright infringement under 17 U.S.C. § 501, which allows

18   the owner of a copyright to institute an action against an infringer of that copyright. To state a

19   claim of copyright infringement, a plaintiff must prove "ownership of a copyright and a copying

20   of protectable expression beyond the scope of a license."  MAI Systems Corp. v. Peak Computer,

21   Inc., 991 F.2d 511, 517 (9th Cir. 1993) (internal quotation marks omitted) (quoting S.O.S., Inc.

22   v. Payday, Inc., 886 F.2d 1081, 1085 (9th Cir. 1989)).  "To prove a claim of direct copyright

23   infringement, a plaintiff must show that he owns the copyright and that the defendant himself

24   violated one or more of the plaintiff's exclusive rights under the Copyright Act."  Ellison v.

25   Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004).

26       The Copyright Act defines "copies" as:

27       material objects, other than phonorecords, in which a work is fixed by any method
         now known or later developed, and from which the work can be perceived,
28       reproduced, or otherwise communicated, either directly or with the aid of a

machine or device.

17 U.S.C. § 101.

The Copyright Act then explains:

A work is "fixed" in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated *518 for a period of more than transitory duration.

17 U.S.C. § 101.

Plaintiff alleges that she was granted a copyright registration for her book "A Special Gift" on June 24, 2014, and she attaches the registration to the complaint. Compl. ¶ 11; Compl., Ex. A. The copyright registration is in her name and establishes the required ownership.

The second issue is whether Defendants have infringed on Plaintiff's protected work. In Plaintiff's complaint she alleges that Defendants sold Plaintiff's book online to customers throughout the country including in this jurisdiction, and that "[she] has never received any compensation for the use of these works nor did Defendants have permission to sell such works." Compl. ¶¶ 12, 13. She also alleges that Defendants have infringed upon her copyright in the book "by copying, selling and distributing Plaintiff's work without authorization or compensation to Plaintiff." Id. at ¶ 15.

Therefore, Plaintiff has adequately alleged that she owns the copyright with respect to the book, and that Defendants copied, sold, and distributed the book without permission. Thus, the complaint sufficiently states a claim for copyright infringement against Defendants. Therefore, these factors weigh in favor of granting default judgement.

3.     The Sum of Money at Stake in the Action

The sum of money at stake in this action weighs against default judgment. Default judgment is disfavored where large amounts of money are involved or the award would be unreasonable in light of the defendant's actions. G & G Closed Circuit Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012). In this action, Plaintiff is seeking statutory damages of $150,000. The Court finds that the amount of money at stake in the action is significant and it is does not appear to be reasonably proportionate to the

1  harm caused by Defendants' conduct in selling Plaintiff's book.  Therefore, this factor weighs

2  against granting default judgment.

3         4.      The Possibility of a Dispute Concerning Material Facts

4        In this action, Plaintiff has filed a well-pleaded complaint including the elements

5  necessary to prevail on the claim raised in this action.  The Clerk of the Court has entered default

6  and therefore, the factual allegations in the complaint are taken as true.

7        However, here, there is something in the record to suggest that there are genuine of issues

8  of material fact in dispute in this action.  Although Defendants have in large part failed to defend

9  themselves in this action, they did file a motion to dismiss and motion to compel arbitration in

10  this action, which gives the Court some insight into the nature of the infringement.  Additionally,

11  Plaintiff has presented information in her motion for default judgment which provides insight

12  into the nature of the infringement.

13        Defendants did make an attempt to challenge the accuracy of the allegations in the

14  complaint when they filed their motion to dismiss on July 13, 2015.  (ECF No. 7.)  Defendants

15  asserted that there was a contract entered into by Plaintiff and Tate Publishing to have Tate

16  Publishing market and publish the book.  Defendants contended that the contract between the

17  parties was essential to the case because it governs the relationship between the parties.

18        Plaintiff then responded that the contract was rescinded by Plaintiff and that Defendants

19  continued to sell the book after the rescission.  In Plaintiff's motion for default judgment, she

20  argues that she properly rescinded the contract.  While there would be a dispute regarding

21  whether Plaintiff properly rescinded the contract, which was the issue to be decided in

22  arbitration, Defendants stopped defending this action, both in this court and in arbitration.

23        The Court finds that the possibility of a dispute concerning material facts slightly weighs

24  against granting default judgment.

25        5.      Whether the Default Was Due to Excusable Neglect

26        Defendants have failed to file an answer in accordance with the Court's April 19, 2017

27  order granting Defendants' counsel's motion to withdraw as counsel of record.  Defendants have

28  also failed to oppose the motion for default judgment.  Additionally, it has been over four months

since the Clerk entered default against Defendants.[2]

The Court concludes that the failure to respond was due to the affirmative decision not to oppose this action rather than excusable neglect. This factor weighs in favor of granting default judgment.

### 6. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

In <u>Eitel</u>, the Ninth Circuit admonished that, "[c]ases should be decided on the merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1482. Whenever possible cases should be decided on the merits, however, a defendant's failure to answer the complaint "makes a decision on the merits impractical if not impossible." <u>PepsiCo, Inc. v. California Security Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. Dec. 27, 2002). Here, Defendants have failed to continue their defense of this action despite repeated opportunities by the Court. Therefore, this factor weights slightly against granting default judgment.

### 7. The Eitel Factors Weigh in Favor of Entry of Default Judgment

After analyzing the <u>Eitel</u> factors, the Court finds that on balance, and especially in light of Defendants' decision to stop defending this action, the factors weigh in favor of granting Plaintiff's application for entry of default judgment.

## C. Relief

### 1. Statutory Damages

Plaintiff seeks statutory damages in the amount of $150,000.00 on the basis that Defendants' conduct was willful.

A plaintiff may elect to recover either actual or statutory damages for copyright infringement. <u>See</u> 17 U.S.C. § 504(c)(1). If statutory damages are elected, "[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." <u>Harris v. Emus Records Corp.</u>, 734 F.2d 1329, 1335 (9th

---

[2] The Court also notes that Defendants' prior counsel, John Migliazzo, declared in his March 15, 2017 declaration that he had made multiple attempts beginning in November 2016 to communicate with Defendants with little or no response. (March 15, 2017 Decl. of John Migliazzo ("Migliazzo Decl.") ¶¶ 3-5, 7-9; ECF No. 48.) Mr. Migliazzo indicated that other than a brief exchange on November 16, 2016, and a response from Ryan Tate on March 8, 2017, his attempts to contact Defendants failed and/or Defendants failed to respond to his inquiries. (<u>Id.</u>)

Cir. 1984).   The maximum amount of damages for willful infringement—which Plaintiff alleges—is $150,000; the minimum is $200.

"[T]he plain language of the statute affords plaintiffs the right to pursue statutory damages without proving actual damages; however, the statute does not provide guidelines for courts to use in determining an appropriate award." In re Mann, 410 B.R. 43, 49 (Bankr. C.D. Cal. 2009) (quoting Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002).   "[A]n award of statutory damages is meant to serve both compensatory and punitive purposes. Curtis v. Illumination Arts, Inc., 682 F. App'x 604, 605 (9th Cir. 2017) (unpublished) (citing L.A. News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998)).

The factors a court can consider in calculating an award of statutory damages include:

> (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."

Microsoft Corp., 549 F. Supp. 2d at 1237.

Here, Plaintiff contends that Defendants have not produced documents establishing the exact number of books sold, profits reaped, and royalties due to Plaintiff.  Plaintiff does admit that during the arbitration proceeding, Defendants produced documents evidencing the sales of books between July 2014 and September 2015, which indicate that 22 books were sold during this period.  (ECF No. 68 at 83-86.)  Plaintiff, however, believes that any documents produced by Defendants lack credibility.  Plaintiff asserts that she cannot place an exact dollar figure on the amount of revenue that she lost as a result of Defendants' infringement because she has not been provided with an accurate accounting.   Plaintiff contends that she has no evidence establishing the value of her book other than the price that it is begin sold for online.  It is being sold for $16.99 on Amazon.com and $15.98 at Barnes and Nobles.  The Court considers that there is evidence that Defendants sold 18 copies of the book between February 2015 and September 2015 at a price of between $15.98 and $16.99.  The Court also considers that based

on the royalty statements that Defendants provided Plaintiff for February 2015 through September 2015, Plaintiff was entitled to royalties of approximately $91.00.

The Court agrees with Plaintiff that an award of statutory damages would have a deterrent effect on other publishers who attempt to knowingly not pay authors their royalties and who continue to sell books even after being told not to do so.

Plaintiff argues that Defendants' conduct was willful because they continued to sell and/or market Plaintiff's book even after they were contacted on several occasions and told to stop. Plaintiff points out that Defendants attempted to have her sign a release and they forced Plaintiff to participate in arbitration which they had no intent of paying for. Plaintiff also points out that Defendant Richard Tate's arrest suggests that Defendants willfully infringed on Plaintiff's copyright. Here, Plaintiff twice told Defendants that it was no longer authorized to use, distribute or sell Plaintiff's book. The Court notes that the publishing agreement contains a clause whereby either party may terminate the agreement with cause. Plaintiff's books were available for sale and purchased from Amazon.com on at least eleven dates after the February 12, 2015 letter from Plaintiff's counsel. Plaintiff's counsel declares that in September 2017, the book was still for sale on Amazon and Barnes and Noble websites. The Court finds that the Defendants' conduct was not innocent, but willful.

As discussed above, Defendants produced some records during arbitration regarding the sales of the book. The Court takes Defendants' production of documents into account and the fact that Defendants sold approximately 18 books between February 2015 and September 2015. Plaintiff states that no documents have been produced establishing how many books were sold between October 2015 and May 4, 2017, the date of Defendant Richard Tate's arrest.

Accordingly, when the Court considers the factors set forth in Microsoft Corp., the Court finds that Plaintiff should be awarded $20,000 in statutory damages on her application for default judgment. See Microsoft Corp., 549 F. Supp. 2d at 1237.

2.  Injunctive Relief

Plaintiff also seeks a permanent injunction against Defendants. She contends in her motion for default judgment that she will continue to be prejudiced by Defendants selling and

exploiting her copyrighted book without permission unless there is an order enjoining Defendants from continuing to infringe Plaintiff's copyright. She states that she has no control over Defendants' distribution of the book.

The Copyright Act authorizes a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). But "an injunction [does not] automatically follow[ ] a determination that a copyright has been infringed." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392 (2006) (citations omitted). "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.' " Weinberger v. Romero–Barcelo, 456 U.S. 305, 312 (1982) (quoting Cavanaugh v. Looney, 248 U.S. 453, 456 (1919)). There is no presumption of irreparable harm just because a copyright has been infringed. Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 995 (9th Cir. 2011).

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, 547 U.S. at 391.

Here, Plaintiff has sufficiently pled a claim of copyright infringement, and as discussed above, Defendants have defaulted and the Court finds that Plaintiff's application for default judgment should be granted. Plaintiff's counsel declares that in September 2017, he visited Amazon and Barnes and Noble's websites and determined that Plaintiff's book is still being advertised on both of the websites. Plaintiff points to these continued sales on Amazon and Barnes and Noble's websites to show that she has no control over Defendants' distribution of the book and that Defendants continue to sell the book. Although Plaintiff contends that the most important breach of the contract was that Defendants have not paid her any royalties even though

there is proof of sales, she also asserts that Defendants materially breached the contract in multiple other ways. Plaintiff asserts that Defendants failed to proofread the book correctly, released it to the public with many typos, grammatical mistakes, and outright changes in the words, and failed to promote or market the book in any way.

The Court finds that Plaintiff has shown that she has suffered an irreparable injury by Defendants selling and continuing to sell the book, that monetary damages are inadequate to compensate for that injury, that a remedy in equity is warranted when considering the balance of hardships between Plaintiff and Defendants, and the public interest would not be disserved by a permanent injunction in this copyright infringement action.

Accordingly, the Court finds that Plaintiff should be granted a permanent injunction to enjoin Defendants from infringing on her copyright for the book.

### 3. Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees for the work of her counsel in this matter. She also seeks costs expended on this matter. Co-counsel Sam Salhab and Jayson Lorenzo submitted declarations in support of the request for attorneys' fees and costs. Attached to the declarations are itemized accounts of the hours spent on this matter by Mr. Salhab, Mr. Lorenzo, Ryan Altomare, an associate of Mr. Lorenzo, and a law clerk who works for Mr. Lorenzo.

Section 505 of Title 17 of the United States Code provides that in copyright actions under Title 17, "the court in its discretion may allow the recovery of full costs by or against any party other than the United states or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Ninth Circuit has found that when district courts are determining "whether to award fees under the Copyright Act, [they] should consider, among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." Maljack Productions, Inc. v. Good Times Home Video Corp., 81 F.3d 881, 889 (9th Cir. 1996) (citing Jackson v. Axton, 25 F.3d 884, 890 (9th Cir. 1994)).

Here, Defendants continued to sell Plaintiff's book after Plaintiff twice told Defendants

that it was no longer authorized to use, distribute or sell Plaintiff's book.  The publishing

agreement contains a clause whereby either party may terminate the agreement with cause.

There were multiple breaches of the publishing agreement by Defendants, including failing to

pay Plaintiff royalties.  The Court notes that Plaintiff has been successful in this action by

securing the entry of default judgment where Defendants stopped defending.  When the Court

considers the record in this action, the Court finds that Plaintiff's arguments are objectively

reasonable, there is no indication of frivolousness, there is no indication that Plaintiff had an

improper motive in bringing this suit, and fees would account for the dual goal of compensating

Plaintiff and deterring Defendants' conduct.  Therefore, the Court finds that Plaintiff should be

awarded attorney fees and costs.  Next, the Court determines whether the amount of attorney fees

and costs that Plaintiff seeks is reasonable.

Because this case is premised on federal question jurisdiction, federal law governs the

award of attorneys' fees.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002)

("Because Washington law governed the claim, it also governs the award of fees."); see also 10

Fern M. Smith, Moore's Federal Practice Civil § 54.171 (2015) ("In cases within the district

courts' federal-question jurisdiction, state fee-shifting statutes generally are inapplicable.")

"[U]nder federal fee shifting statutes the lodestar approach is the guiding light in

determining a reasonable fee."  Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176

(9th Cir. 2010) (internal punctuation and citations omitted).  The Ninth Circuit has explained the

lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the
> "lodestar" amount by multiplying the number of hours reasonably expended on the
> litigation by a reasonable hourly rate.  See D'Emanuele [v. Montgomery Ward &
> Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990)]; Hensley [v. Eckerhart, 461 U.S.
> 424,] 461 (1983).  The party seeking an award of fees must submit evidence
> supporting the hours worked and the rates claimed.  See Hensley, 461 U.S. at 433.
> A district court should exclude from the lodestar amount hours that are not
> reasonably expended because they are "excessive, redundant, or otherwise
> unnecessary."  Id. at 434.  Second, a court may adjust the lodestar upward or
> downward using a "multiplier" based on factors not subsumed in the initial
> calculation of the lodestar. [footnote omitted] See Blum v. Stenson, 465 U.S. 886,
> 898-901 (1984) (reversing upward multiplier based on factors subsumed in the
> lodestar determination); Hensley, 461 U.S. at 434 n. 9 (noting that courts may look
> at "results obtained" and other factors but should consider that many of these
> factors are subsumed in the lodestar calculation).  The lodestar amount is

presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high.  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) (quoting Blum, 465 U.S. at 898-901); Blum, 465 U.S. at 897; D'Emanuele, 904 F.2d at 1384, 1386; Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1989).

Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  Under the lodestar method, the court will first determine the appropriate hourly rate for the work performed, and that amount is then multiplied by the number of hours properly expended in performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the discretion to make adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).

**a.  Hourly Rates**

Plaintiff seeks $350.00 for Mr. Salhab, $325.00 for Mr. Lorenzo, and $225.00 for Mr. Altomare.  In Mr. Lorenzo's billing records there is one entry by a law clerk for 4.10 hours and this is included in the total number of hours that Mr. Lorenzo's firm is seeking to be compensated for.  The billing records indicate that the law clerk's rate is $150.00.

The Supreme Court has explained that the loadstar amount is to be determined based upon the prevailing market rate in the relevant community.  Blum, 465 U.S. at 896.  The "relevant legal community" for the purposes of the lodestar calculation is generally the forum in which the district court sits.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013).  The relevant community here is the Fresno Division of the Eastern District of California.

There must be objective support in the record before this Court – i.e., some type of local rate report and/or affidavits of local counsel – that either establish $350.00, $325.00, $225.00, and $150.00 is the prevailing hourly market rate in Fresno for attorneys and law clerks of similar experience and skill for each of the attorneys and law clerks that Plaintiff is seeking fees for or that $350.00, $325.00, $225.00, or $150.00 is an out-of-district hourly rate that should be awarded because local counsel could not be retained or the special expertise of outside-the-

district counsel was necessary. See Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).

Plaintiff has not submitted declarations or other objective evidence in support of the rates that her attorneys are seeking, other than declarations stating what the hourly rate is for the attorneys seeking fees in this matter. She also has not pointed to any legal authority to support the rates that she is seeking. Further, Plaintiff's counsel do not argue that hourly rates other than those of the Fresno Division should be used.

Courts in the Fresno Division of this District have found that the "current reasonable range of attorneys' fees" for cases litigated in the Eastern District of California's Fresno Division "is between $250 and $400 per hour." Barkett v. Sentosa Props. LLC, No. 1:14–CV–01698–LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (citing Silvester v. Harris, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17 2014)). Within this range, "the highest rates [are] generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." Barkett, 2015 WL 5979828, at *5 (quoting Silvester, 2014 WL 5797828, at *4).

In the Fresno Division, attorneys with experience of twenty or more years of experience are awarded $350.00 to $400.00 per hour. See Sanchez v. Frito-Lay, Inc., No. 1:14-CV-00797 AWI, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350 per hour in a wage and hour class action); Willis v. City of Fresno, No. 1:09-CV-01766-BAM, 2014 WL 3563310, at *12 (E.D. Cal. July 17, 2014) adhered to on reconsideration, No. 1:09-CV-01766-BAM, 2014 WL 4211087 (E.D. Cal. Aug. 26, 2014) (awarding attorneys with over twenty five years of experience $380.00 per hour); Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1169 (E.D. Cal. 2011) (finding an hourly rate of $350.00 is near the top range of hourly rates in the Fresno Division and awarding $380.00 per hour to an attorney with 40 years of experience); Silvester v. Harris, No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014) (awarding attorneys with twenty years of experience $335.00 and $375.00 per hour); Verduzco v. Ford Motor Co., No. 1:13-CV-01437-LJO, 2015 WL 4131384, at *4 (E.D. Cal. July 9, 2015) report and

recommendation adopted, No. 1:13-CV-01437-LJO, 2015 WL 4557419 (E.D. Cal. July 28, 2015) (awarding attorney with over 40 years of experience $380.00 per hour).

Courts in the Fresno Division have found that the reasonable hourly rates for competent attorneys with less than fifteen years of experience are $250 to $350 per hour. See White v. Rite of Passage Adolescent Treatment Centers and Schools, No. 1:13-cv-01871-LJO-BAM, 2014 WL 641083, at *5 (E.D. Cal. Feb. 18, 2014) (awarding $300.00 per hour for counsel with six years of experience in representation action under the California Private Attorney General Act of 2004); Ramirez v. Merced County, No. 1:11-cv-00531-AWI-DLB, 2013 WL 4780440, at *9 (E.D. Cal. Sept. 5, 2013) (awarding $350.00 per hour to attorney with more than 30 years of experience and $250.00 for attorney with 14 years of experience); Jadwin, 767 F.Supp.2d at 1134 (awarding hourly rates of $350.00 for attorney with 14 years of experience, $275.00 for attorney with 11 years of experience, and $295.00 for contract attorney with 18 years of experience in employment action).

Additionally, "$300 is the upper range for competent attorneys with approximately a decade of experience." Barkett, 2015 WL 5979828, at *5 (quoting Silvester, 2014 WL 5797828, at *4); see also Silvester, 2014 WL 7239371, at *4 (noting that courts in Fresno Division of this District "found that the accepted range is between $175 and $300 per hour" for "competent practitioners with less than ten years of experience" (citations omitted)).

Courts in this division find that the prevailing rate for an attorney with less than two years of experience would range from $125.00 to $200.00 per hour. See Miller, 2014 WL 642729, at *2 (awarding $125.00 per hour for attorney with nine months of experience); Gerawan Farming, Inc. v. Rehrig Pac. Co., No. 1:11-CV-1273 LJO BAM, 2013 WL 6491517, at *11 (E.D. Cal. Dec. 10, 2013) (awarding $150.00 per hour for a new attorney who worked on a complicated patent dispute); Fitzgerald v. Law Office of Curtis O. Barnes, No. 1:12-CV-00071-LJO, 2013 WL 1627740, at *4 (E.D. Cal. Apr. 15, 2013) report and recommendation adopted, No. 1:12-CV-00071 LJO, 2013 WL 1896273 (E.D. Cal. May 6, 2013) (awarding attorney with one year of experience $200.00 per hour); Silvester, 2014 WL 7239371, at *4 (awarding attorneys with one year experience $150.00 and $175.00 per hour).

In this division, the reasonable rate of compensation for a paralegal would be between $75.00 to $150.00 per hour depending on experience. Sanchez, 2015 WL 4662636, at *18 ((finding reasonable rate for paralegal was $125.00 per hour and legal assistant was $75.00 per hour in a wage and hour class action); see also Willis, 2014 WL 3563310, at *14; Miller, 2014 WL 642729, at *2 (awarding $100.00 per hour for a paralegal); Silvester, 2014 WL 7239371, at *4 (current reasonable rate for paralegal work in Fresno is between $75.00 and $150.00 depending on experience); Gordillo v. Ford Motor Co., No. 1:11-CV-01786 MJS, 2014 WL 2801243, at *6 (E.D. Cal. June 19, 2014) (awarding $125.00 per hour for paralegal work).

Here, Mr. Salhab states that he has been practicing law for 10 years and that his hourly rate is $350.00. (September 28, 2017 Decl. of Samer Salhab ("Salhab Decl."), ECF No. 68 at 26-29, ¶ 12.) At the hearing, Mr. Salhab stated that $350.00 is a reasonable rate for his compensation in this action because he is well-versed in copyright issues. He stated that he was engaged in the music business and owned a recording company prior to becoming a lawyer. He also was in the entertainment law society in law school. He has worked as a lawyer on matters in the music industry.

While $350.00 has been found to be a reasonable hourly rate for attorneys in the Fresno Division, Plaintiff has not shown that $350.00 is reasonable for an attorney with Mr. Salhab's experience working on a comparable action in the Fresno Division. The Court notes that there are competent IP attorneys in the Fresno area who could have competently handled such as case as this, but the Plaintiff's counsel has not provided evidence of their rate and experience consistent with a $350 hourly rate. Therefore, the Court finds that Plaintiff has not presented satisfactory evidence that Mr. Salhab's requested rate of $350.00 per hour is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Camacho, 523 F.3d at 980 (quoting Blum, 465 U.S. at 895 n. 11). Although "$300 is the upper range for competent attorneys with approximately a decade of experience," Barkett, 2015 WL 5979828, at *5 (citation omitted), the Court finds that in light of Mr. Salhab's experience in the music business and familiarity with copyright issues, and when considering the nature of this case and the rate determinations in other cases before this Court,

the Court finds that $325.00 is a reasonable hourly rate for Mr. Salhab's time expended in this action.

Mr. Lorenzo states that he has been practicing law for 16 years and that he holds a Master of Laws in Intellectual Property. (September 28, 2017 Decl. of Jayson Lorenzo ("Lorenzo Decl."), ECF No. 68 at 107, ¶ 4.) He states that his hourly rate is $325.00. (Id.) The Court finds that $325.00 is a reasonable hourly rate for Mr. Lorenzo's time expended in this action considering his experience of 16 years practicing law and his Master of Laws in Intellectual Property and in light of the rate determinations in other cases before this Court.

Mr. Lorenzo states that he has an associate, Mr. Altomare, who has been practicing for almost two years and has an hourly rate of $225.00. (Id.) There is no information provided about any other qualifications that Mr. Altomare may have and no information is provided regarding areas of specialization. The Court finds that $150.00 is a reasonable hourly rate for Mr. Altomare's time expended in this action considering his experience and the rate determinations in other cases before this Court.

The billing records indicate that the law clerk's rate is $150.00. However, there is no information provided about the law clerk. Considering that there is no information provided about the law clerk, the Court finds that $75.00 is a reasonable hourly rate for the law clerk at Mr. Lorenzo's firm considering rate determinations in other cases before this Court.

**b.     Reasonable Hours**

Plaintiff seeks attorney fees for 239.10 hours of work, which is based on 112.25 hours by Mr. Salhab, 52.3 hours by Mr. Lorenzo, 70.45 hours by Mr. Altomare, and 4.10 hours by a law clerk working for Mr. Lorenzo.

Upon a review of the billing records submitted to the Court, the Court finds that a 10 percent cut to the number of hours is appropriate in this matter. A court can impose a reduction up to 10 percent based on discretion and without a more specific explanation. See Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008).

The Court finds that there are instances in the billing records where Plaintiff's counsel seeks to recover at the attorney rate for clerical tasks, and instances where the number of hours

counsel is seeking to be compensated for is excessive in light of the task. For example, Plaintiff seeks attorneys' fees for clerical tasks such as setting up ECF/CM, filing the lawsuit through ECF/CM, filing oppositions to a motion, and filing a motion.

An example of excessive billing in light of the task is the number of hours that Mr. Salhab is seeking for drafting and filing status reports. Mr. Salhab seeks 2 hours for drafting and filing a status report on February 24, 2016; 2 hours for drafting and filing a status report on September 6, 2016; 30 minutes for filing a status report on December 15, 2016; 45 minutes for drafting and filing a status report on March 15, 2017; and 45 minutes for drafting an filing a status report on April 17, 2017. The status reports are short reports that contain a paragraph of factual information, and should have taken much less time.

Another example of excessive billing in light of the task is the number of hours that Mr. Lorenzo's firm and Mr. Salhab seek for preparing the oppositions to the motion to compel arbitration and motion to dismiss. Mr. Lorenzo's firm seeks 10.2 hours related to the opposition to the motion to dismiss, 23.6 hours related to the opposition to the motion to compel arbitration, and 8.2 hours that is related to both motions for a total of 42 hours on the oppositions to the motion to compel arbitration and motion to dismiss. Mr. Salhab seeks 14 hours related to the oppositions to the motion to compel arbitration and motion to dismiss. Considering the task, 56 hours preparing the oppositions to the motion to dismiss and motion to compel arbitration is excessive.

Thus, the Court finds that 10 percent of the hours for each attorney and law clerk should be cut.

### c. Lodestar Figure

The Court must now multiply the reasonable hourly rates for each attorney by the reasonable number of hours that each attorney spent on this matter.

Mr. Salhab is entitled to compensation for 101.03 hours at a rate of $325.00 per hour for a total of $32,834.75. Mr. Lorenzo is entitled to compensation for 47.07 hours at a rate of $325.00 per hour for a total of $15,297.75. Mr. Altomare is entitled to compensation for 63.41 hours at $150.00 per hour for a total of $9,511.50. The law clerk at Mr. Lorenzo's law firm is

entitled to compensation for 3.69 hours at $75.00 per hour for a total of $276.75.[3]

Therefore, Plaintiff is entitled to an award of $57,920.75 in attorneys' fees for the time that Plaintiff's counsel spent on this matter.

### d.    Costs

Finally, Plaintiff is seeking costs of $13,283.17, which she contends was incurred from filing and arbitration fees, deposition costs, and other miscellaneous expenses.

Plaintiff originally sought $10,310.00 for fees that were sent to AAA for arbitration. The Court notes that Plaintiff does not provide any documentation of these fees being paid to AAA. Plaintiff states that she paid $3,250.00 for filing fee of her demand for arbitration to AAA on October 1, 2015. She also states that she paid $7,050.00 for final fees to AAA on January 15, 2016. She states that she paid $10.00 for a miscellaneous fee on March 7, 2017.

While Plaintiff originally sought $10,310.00, which is the full amount of money that was paid to the AAA for arbitration, counsel stated at the hearing that there was a $2,588.35 refund from AAA for excess funds not used by the arbiter. In the retainer agreement accounting, Plaintiff lists "Retainer Deposit, AAA excess funds not used by Arbiter" on May 30, 2017 for $2,588.35. (ECF No. 68 at 97.) Plaintiff states that she is only seeking the amount of fees that she paid to AAA for arbitration minus the refund amount, so she is seeking $7,721.65 for fees paid to AAA for arbitration. The Court finds that this is a reasonable expense that should be awarded to Plaintiff.

Plaintiff seeks $1,050.00 for the fees for filing applications for admission to Oklahoma. It appears that $350.00 was for an application that was sent on October 7, 2015 for Mr. Salhab, $350.00 was for an application for Mr. Lorenzo on November 15, 2015, and $350.00 was for an application for Mr. Lorenzo on November 15, 2016. There is no explanation why there are two application fees for Mr. Lorenzo and only one application fee for Mr. Salhab. This appears to be a clerical mistake and that there may have only been one fee. Therefore, as the Court finds that $350.00 of the application fees for admission to Oklahoma are potentially duplicative, the Court

---

[3] Plaintiff does not request an adjustment to the lodestar figure. In the absence of an argument on this point, the Court declines to adjust the lodestar figure.

only awards Plaintiff $700.00 for the application fees for admission to Oklahoma for Mr. Salhab and Mr. Lorenzo.

Plaintiff seeks $1,695.00 for payment to City Reporters, Inc. regarding the deposition of Defendants. The Court notes that Plaintiff has not submitted an invoice or any documentation regarding this bill. However, the Court finds that this is an appropriate cost.

Plaintiff seeks $28.17 for several mailings by United States Postal Service ("USPS"). The Court finds that these are appropriate costs. Plaintiff also seeks $105.00 for personal service of Defendants by Shadid & Associates and $95.00 for personal service to Bancfirst by Shadid & Associates. The Court finds that these are appropriate costs.

Therefore, Plaintiff is entitled to $13,344.82 in costs.

## IV.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's application for default judgment is granted against Defendants;

2.   The Clerk of the Court is directed to enter judgment in favor of Plaintiff Terri Roach and against Defendants Tate Publishing & Enterprises, LLC, Tate Music Group, and Richard Tate on Plaintiff's copyright infringement claim;

3.   Defendants are permanently enjoined from further infringing Plaintiff's copyright in "A Special Gift," Copyright Registration No. TX-7-937-972 in any manner, including but not limited to copying, manufacturing, printing, reprinting, publishing, distributing, selling, promoting or advertising any copies of the copyrighted work or by causing and/or participating in such manufacture, reprinting, publishing, distributing, selling, promoting or advertising of others;

4.   Plaintiff is awarded statutory damages pursuant to 17 U.S.C. § 504(c)(1) of $20,000;

/ / /

/ / /

/ / /

5.      Plaintiff is awarded attorneys' fees of $57,920.75;

6.      Plaintiff is awarded costs of $13,344.82; and

7.      The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated:   **November 2, 2017**
_____
UNITED STATES MAGISTRATE JUDGE